LAW OFFICES OF WILLIAM B. HILDEBRAND L.L.C.
By: William B. Hildebrand, Esq.
1040 North Kings Highway
Suite 601
Cherry Hill, NJ 08034
(856) 482-7100
Attorney for Plaintiff
WH:4166

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| CLIFFORD J. LEVINE, | |
| Plaintiff, | CIVIL ACTION |
| v. | Docket No.: |
| VOORHEES BOARD OF EDUCATION, XYZ CORP., and JOHN DOES 1-10 (fictitious individuals and entities), | **COMPLAINT AND JURY TRIAL DEMAND** |
| Defendant(s) | |

Plaintiff, Clifford J. Levine, residing in Marlton, NJ, by way of Complaint against Defendants says:

### NATURE OF THE ACTION

1. Plaintiff, Clifford J. Levine brings this action to redress injuries sustained as a result of Defendants' violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 et. seq. ("the FMLA"), New Jersey's Law Against Discrimination ("the LAD") and the common law.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is invoked pursuant to 29 U.S.C. § 2617. This Court also has jurisdiction under the doctrine of supplemental jurisdiction with respect to the state claims set forth herein.

3. Defendants' unlawful employment practices were committed in the District of New Jersey; therefore venue is appropriate in this district.

## PARTIES

4. Plaintiff, Clifford J. Levine , is an individual who resides in Marlton, NJ.

5. Defendant, Voorhees Board of Education, and/or XYZ Corp. ("the Board") is a local School Board, with an office and principal place of business located at 3209 Rte 73, Voorhees, NJ 08043, and is Plaintiff's employer. At all times material hereto, the Board was acting through its agents, servants and employees who were duly authorized to act on your behalf.

6. The Board, is an "employer" within the meaning of the FMLA and the LAD.

7. Defendants, John Does 1-10 (fictitious individuals and/or entities) aided and abetted the Board's violation of the FMLA and LAD, as described more fully herein. Therefore, they are jointly responsible with that entity for the illegal and unlawful actions described herein.

## FACTS

8. Plaintiff began his employment with the Board in September, 2000 as a sixth grade math and social studies teacher. He performed his tasks admirably and received

excellent evaluations and regular raises. Due to his excellent job performance, his teaching contract was renewed by the Board for each of the next three (3) years. In September, 2003, he obtained tenure by virtue of his working as a teacher for more than three (3) consecutive years.

9. In July, 2004, Plaintiff was promoted to the position of Supervisor/Vice Principal for the Osage Elementary School. His official start date in this capacity was: September 1, 2004.

10. On January 10, 2005, he received his first performance appraisal in his new position. His evaluator, Diane Young, gave him the highest possible rating in all applicable performance categories. A true and correct copy of this performance review is attached, marked Exhibit "A".

11. During January and February, 2005, Plaintiff's mental health deteriorated due to a chemical inbalance in his brain. In March, 2005, he experienced a psychotic episode at work. On March 9, 2005, he was taken by ambulance to Kennedy Hospital where he remained overnight. On March 11, 2005, when he attempted to return to his position at the Osage School, he was met in the parking lot by Superintendent Ray Brosel, Principal Diane Young, and a police officer. Superintendent Brosel told him that he would need a psychiatrist's note before he would be permitted to return to work.

12. On March 14, 2005, Superintendent Brosel sent Plaintiff a letter notifying him that he was being placed on sick leave effective March 14, 2005. The letter also requested that he undergo a psychiatric examination, and advised that they would require proof of

recovery satisfactory to the Board upon completion of treatment. A true and correct copy of that letter is attached, marked Exhibit "B".

13. On March 23, 2005, Plaintiff began treating with Allan M. Gruenberg, MD, a psychiatrist.

14. On April 6, 2005, Superintendent Brosel wrote to Dr. Gruenberg, requesting detailed information regarding his assessment, evaluation and diagnosis of Plaintiff's condition, together with an estimate of when he could return to work. A true and correct copy of this letter is attached, marked Exhibit "C".

15. On April 10, 2005, Dr. Gruenberg wrote a letter to Superintendent Brosel, advising that, in his opinion, Plaintiff could return to work in his position as Assistant Principal at Osage Elementary School beginning April 14, 2005. A true and correct copy of Dr. Gruenberg's letter is attached, marked Exhibit "D".

16. On April 19, 2005, Dr. Gruenberg sent another letter to Superintendent Brosel providing additional information regarding Plaintiff's condition and treatment and reiterating his opinion that Plaintiff "is able to return to work in his position as Assistant Principal at Osage Elementary School." Dr. Gruenberg further advised that Plaintiff's emotional and physical health were "excellent." A true and correct copy of this letter is attached, marked Exhibit "E".

17. Despite receiving two (2) letters from Plaintiff's treating physician, clearing him to return to work without restrictions, Defendants failed and refused to reinstate Plaintiff to his former position despite repeated demands to do so. Instead, on April 26, 2005, Assistant

Superintendent Frances S. Collins sent Plaintiff a letter notifying him that a recommendation was bring made to terminate his employment. A true and correct copy of this letter is attached, marked Exhibit "F".

18. On May 5, 2005, Superintendent Brosel wrote a letter to Plaintiff, advising him that his employment contract as a Supervisor/Assistant Principal would not be renewed. Instead, they offered him a contract as a teacher, at a substantial reduction in salary. A true and correct copy of this letter is attached, marked Exhibit "G".

19. Prior to the termination of his employment as a Supervisor/Assistant Principal in June, 2005, no medical professional had expressed an opinion that Plaintiff was not physically or mentally capable of performing his job. Rather, Plaintiff's treating psychiatrist cleared him in April, 2005, to return to this position without restrictions.

20. There was no legitimate, business reason for Defendants' decision to terminate Plaintiff's employment as a Supervisor/Assistant Principal. Rather, this decision was based, in determinative part, upon the exercise of Plaintiff's rights under the FMLA and/or on account of Defendants' unfounded and unsubstantiated fear that he suffered from a psychiatric or psychological condition which prevented him from performing the essential functions of his job.

## **FIRST COUNT**

21. Plaintiff hereby repeats and incorporates by reference each and every allegation in paragraphs 1-20 above, as fully as though the same were here set forth at length.

22. The FMLA protects individuals (such as Plaintiff) who are required to be absent

from work for short periods because of a serious health condition affecting them or a member of their family. Employees whose absence falls within the scope of the FMLA are entitled to important protections, including the fact that their leave cannot be denied, their health benefits must be maintained, and their jobs are protected.

23. Under the FMLA, the employer is responsible for determining whether leave is FMLA-qualifying, even if the leave is not specifically designated as such by the employee.

24. Plaintiff was absent from work due to a serious health condition from March 9, 2005 until April 14, 2005, when he was cleared to return to work without restrictions. Defendants knew (or should have known) that Plaintiff was suffering from a serious health condition, and therefore the absence qualified as FMLA-protected leave. Therefore, upon the cessation of that leave, Plaintiff was entitled to return to the same position he held when the leave commenced.

25. As a condition of restoring an employee to his former position, an employer may, pursuant to a uniformly-applied policy or practice, require that the employee present a certification from his treating physician at testing to his ability to resume work. However, the certification "need only be a simple statement of an employee's ability to work." 29 C.F.R. § 825.310 (c). The employer's doctor may also contact the employee's doctor for purposes of clarification of the employee's fitness to work. However, "[t]he employer may not delay the employee's return while contact with the health provider is being made." Id.

26. Defendants have an established policy and practice of requiring nothing more than a doctor's note when an employee returns from sick leave. Nevertheless, Plaintiff's

treating physician fully complied with any and all requests by Defendants for information regarding Plaintiff's condition and fitness to return to duty. Nevertheless, Defendants failed and refused to permit him to return to work in April, 2005, despite repeated demands to do so.

27. By failing and refusing to permit Plaintiff to return to work following the cessation of his FMLA-protected leave, Defendants violated Plaintiff's rights under the FMLA.

28. Section 105 (a)(1) of the FMLA makes it unlawful for any employer to interfere with, restrain, or otherwise deny any right provided by that Act.

29. Section 107 of the FMLA, 29 U.S.C. § 2617, permits an employee who has been deprived of his rights under the FMLA to file a civil action against his employer. In addition to other damages, the statute authorizes the Court to award reasonable liquidated damages, attorney's fees, expert witness fees, and costs to a successful Plaintiff.

30. Defendants' actions, as described aforesaid, interfered with, restrained and/or denied Plaintiff's rights under the FMLA, entitling him to damages for all economic losses and expenses proximately resulting therefrom.

WHEREFORE, Plaintiff demands judgement against Defendants jointly, severally, and in the alternative, for:

    A. Such sums as will adequately compensate him for the economic losses and damages he sustained, including but limited his loss of income past, present and future;

    B. Such sums as will adequately compensate him for his lost benefits;

  C. Liquidated damages;

  D. Interest, costs of suit and reasonable attorney's fee's ;

  E. Reinstatement and/or front pay; and

  F. Such further relief as the Court deems just and proper.

## SECOND COUNT

  31. Plaintiff hereby repeats and incorporates by reference each and every allegation in paragraphs 1-30 above, as fully as though the same were here set forth at length.

  32. By letter dated April 26, 2005, Assistant Superintendent Frances S. Collins notified Plaintiff that a recommendation to terminate his employment as Supervisor/Assistant Principal would be considered by the Board of Education on May 4, 2005.

  33. On May 5, 2005, Superintendent Ray Brosel, Jr. advised Plaintiff of the Board's decision not to renew his employment contract as a Supervisor/Assistant Principal. Defendants' decision to terminate Plaintiff's employment as a Supervisor/Assistant Principal was based, in determinative part, upon the exercise of Plaintiff's rights under the FMLA.

  34. Section 105(a)(2) of the FMLA, 29 U.S.C. § 2615(a)(2), makes it unlawful for any employer to discharge or in any manner discriminate against an individual for opposing any practice made unlawful by the FMLA.

  35. Defendants considered Plaintiff's absence on FMLA leave in March and April, 2005 as "negative factors" in the decision to terminate his employment as

Supervisor/Assistant Principal. Accordingly, Defendants engaged in illegal and unlawful discrimination in violation of Section 105(a)(2) of the FMLA, 29 U.S.C. § 2615(a)(2), subjecting them to liability for all losses proximately resulting therefrom.

36. Section 107 of the FMLA, 29 U.S.C. § 2617, authorizes an employee who has been unlawfully discriminated against in violation of the FMLA to file a Civil Action against his employer. In addition to other damages, the statute authorizes the Court to award reasonable liquidated damages, attorney fees, experts witness fees, and costs to a successful plaintiff.

37. Defendants' actions, as described aforesaid, constitute illegal and unlawful discrimination in violation of the FMLA, entitling Plaintiff to damages for the economic losses and expenses proximately resulting therefrom.

WHEREFORE, Plaintiff demands judgement against Defendants jointly, severally, and in the alternative, for:

    A. Such sums as will adequately compensate him for the economic losses and damages he sustained, including but limited his loss of income past, present and future;

    B. Such sums as will adequately compensate him for his lost benefits;

    C. Liquidated damages;

    D. Interest, costs of suit and reasonable attorney's fee's;

    E. Reinstatement and/or front pay; and

    F. Such further relief as the Court deems just and proper.

## THIRD COUNT

38. Plaintiff hereby repeats and incorporates by reference each and every allegation in paragraphs 1-37 above as fully as though the same were here set forth at length.

39. The LAD protects individuals (like Plaintiff) who suffer from physical or mental disabilities or health conditions which interfere with the normal functions of every day life. The LAD prohibits employers from discriminating against handicapped individuals, with respect to the terms and conditions of their employment. Specifically, employers may not discriminate against or otherwise deprive employees of employment opportunities unless they can demonstrate that the employee's handicap prevents them from performing the essential functions of their job, with or without reasonable accommodation. Furthermore, the LAD makes it unlawful for an employer to discharge or otherwise discriminate against an employee because of an actual or perceived handicap.

40. Defendants believed that Plaintiff was suffering from a psychiatric/ psychological disorder which made him incapable of performing his job as a Supervisor/Assistant Principal. For this reason, they did not permit him to return to this position following the expiration of his FMLA leave, and ultimately terminated his employment.

41. Defendants' beliefs regarding Plaintiff's ability to work were not based on any competent medical evidence or objective criteria.

42. Defendants' decision not to permit Plaintiff to return to work and to terminate his employment were based, in determinative part, on Plaintiff's actual or perceived handicap, in violation of the protections afford and Plaintiff under the LAD.

43. At the time of the termination of Plaintiff's employment as a Supervisor/Assistant Principal in April and May, 2005, Plaintiff was fully capable of performing all the duties and functions of his job, without restriction. Nevertheless, Defendants decided to terminate his employment in this position, based on no competent medical evidence or objective criteria.

44. As a direct and proximate result of Defendants' illegal and unlawful conduct, Plaintiff has suffered great mental and emotional distress; anxiety and depression; psychological disturbance; a loss of earnings and earning capacity; a loss of benefits; and the loss of the ordinary pleasures of everyday life, including the right to pursue the gainful occupation of his choice.

45. Defendants' actions, as described aforesaid, were willful, wanton and malicious, so as to justify the imposition of punitive damages.

WHEREFORE, Plaintiff demands judgement against Defendants jointly, severally, and in the alternative, for:

 A. Such sums as will adequately compensate him for the economic losses and damages he sustained, including but limited to, his loss of income past, present and future;

 B. Such sums as will adequately compensate him for the mental anguish, humiliation, emotional distress, physical pain, and other losses caused by his discharge and inability to afford adequate medical care and treatment;

 C. Reinstatement to his former employment;

 D. Punitive damages;

 E. Such sums as will adequately compensate Plaintiff for any other losses

sustained as a result of Defendants' actions, as described above, together with interest, costs of suit and reasonable attorney's fees;

  F. Such other relief that this Court deems just and proper;

## FORTH COUNT

  46. Plaintiff hereby repeats and incorporates by reference each and every allegation in paragraphs 1-45 above as fully as though the same were here set forth at length.

  47. During the Spring of 2006, Plaintiff applied to transfer to an available middle school Social Studies position, a subject which he previously taught for several years.

  48. Objectively, Plaintiff was the most qualified applicant for the position. However, he was not selected. Rather, the position was given to a less qualified candidates with less experience teaching social studies.

  49. Plaintiff's history of psychiatric/psychological problems was a determinative factor in Defendants' decision not to transfer Plaintiff to this position.

  50. The LAD makes it unlawful to discriminate against employees in the terms and conditions of their employment and to deny them promotions or transfers, based upon actual or perceived handicaps. Therefore, Defendant's actions, as described aforesaid, violate the LAD, making Defendants liable for all losses and damages proximately resulting therefrom.

  51. As a result of Defendant's decision not to transfer Plaintiff to the Social Studies position, Plaintiff has been damaged and deprived of the right to pursue the gainful occupation of his choice.

  52. Defendants' actions, described aforesaid, were willful, wanton and malicious,

so to justify the imposition of punitive damages.

WHEREFORE, Plaintiff demands judgement against Defendants jointly, severally, and in the alternative, for:

A. Such sums as will adequately compensate him for the economic losses and damages he sustained, including but limited to, his loss of income past, present and future;

B. Such sums as will adequately compensate him for the mental anguish, humiliation, emotional distress, physical pain, and other losses caused by his discharge and inability to afford adequate medical care and treatment;

C. Transfer to the Social Studies position;

D. Punitive damages;

E. Such sums as will adequately compensate Plaintiff for any other losses sustained as a result of Defendants' actions, as described above, together with interest, costs of suit and reasonable attorney's fees;

F. Such other relief that this Court deems just and proper;

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.


Dated: 4/5/07                                             s/ William B. Hildebrand
                                                          William B. Hildebrand, Esq.